UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. _______________

FRANCISCO ZAMBRANA,

Plaintiff,

Vs.

CITY OF OPA-LOCKA,

Defendant.
______________________________/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Francisco Zambrana, sues Defendant, the City of Opa-Locka, and alleges:

### Nature of Action and Jurisdiction

1. This is an action for damages under 42 U.S.C. § 1983 against Defendant for committing acts, under color of state law, with the intent and for the purpose of depriving Plaintiff of rights secured under the Constitution and laws of the United States.

2. This Court has jurisdiction under 28 U.S.C. § 1331.

3. Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391 as all events giving rise to this cause of action occurred in this judicial district.

4. All conditions precedent to this action have occurred or been performed.

### Parties

5. Plaintiff, Francisco Zambrana, is sui juris and a resident of Miami-Dade County, Florida.

6. Defendant, the City of Opa-Locka ("City"), is a municipal corporation lying within Miami-Dade County, Florida.

7. At all-time relevant, the individuals described herein, who were employees and public officials of the City, acted under color of state law.

**Facts**

8. Mr. Zambrana, who arrived in the United States in 1984 from Nicaragua, always believed that with hard work he could provide for his family.

9. For approximately 20 years, he sold heavy construction and farm equipment, mostly through auctions, and thought he found a location in the City from which to base his business, for the storage, repair and sale of equipment.

10. Mr. Zambrana found a location at 2695 NW 141st St., in Opa-Locka at a good price and offered with a lease to purchase option. Mr. Zambrana used his savings and borrowed money from friends to lease the property that would house his business with the option of eventually purchasing the property. Mr. Zambrana did not know that he was about to enter into the nightmare of extortion, coercion, threats and intimidation at the hands of the City employees and public officials as he tried to obtain the necessary license to run his business within the City's limits. A license that is routinely obtained for a few hundred dollars became a living hell for Zambrana.

11. Mr. Zambrana's attempt to get an occupational license was met with a series of delays, and rejections as he was repeatedly told his application was incomplete, or rejected without explanation.

12. At one time, the City asked for the plans for the future use of his property, and Mr. Zambrana provided the City with the only set of plans he had. When he returned to get his license, the City rejected it again claiming it needed the plans and stating that Mr. Zambrana never gave the City the plans. Each time Mr. Zambrana returned with a completed application, it was summarily denied.

13. In the meantime, the City's Code Enforcement Chief, Gregory Days, became the enforcer as he assisted his higher-ups in the extortion of Zambrana. Days would go by Mr. Zambrana's location on a regular basis with threats of shutting down Mr. Zambrana's business, throwing him in jail or reporting him to immigration.

14. Days required Zambrana to repair holes at his location and paint it. Thereafter, Days would criticize the repairs and the paint. Days required Zambrana to put tarp around the fence so the equipment could not be seen. Zambrana did it all in the hopes of getting the license so he could provide for his family, including his teenage son who was battling cancer.

15. Days visited Zambrana's property unannounced once or twice a week threatening Zambrana with shutting him down for working without a license. Fines were levied against Zambrana and each time Zambrana would ask why, it was for operating a business without an occupational license.

16. Days would tell Zambrana to see him at the City with the new application, so Zambrana would set an appointment only to have Days fail to show.

17. With each subsequent visit, the threats from Days became more hostile. Days would show up with his customary line of that all you motherf***ers are going to jail, and the often repeated threat that he would be calling immigration. Days referred to Zambrana as

"Mexican". The threat of deportation was repeatedly made as Days used Zambrana's national origin to escalate the threats.

18. With each threat, Zambrana would tell Days that he just wanted to work and he needed his license. Zambrana would ask Days what he needed to do to get his occupational license and the response was just more threats.

19. Zambrana began working at nights out of fear that Days would see him at work during regular work hours are threaten him with jail and deportation. The same fears caused Zambrana to only use his location to store equipment fearing that sales from the location would cause even more threats from Days.

20. One night, Mr. Zambrana was cleaning equipment with two others when Days appeared unannounced. Days yelled at them to get against the wall because he was calling Immigration.

21. One day, after one of Zambrana's regular visits to the City with his application hand and after receiving the same response of rejection then directing him to see Mr. Days, Opa-Locka Commissioner Luis Santiago stopped Zambrana and told him that he [Santiago] heard Zambrana was having trouble getting a license from the City. When Zambrana explained the multitude of problems, Santiago offered to help him.

22. Santiago met Zambrana at Zambrana's business and told Zambrana that he could get the occupational license easily but it will cost him $2,800.00. Santiago told Zambrana that he must do exactly what Santiago instructed him to do. Santiago advised Zambrana that Days worked for Santiago so Santiago could help him.

23. Zambrana told Santiago he can get $1,500.00 by the next day but he needed more time to pay for the balance to secure his occupational license. Zambrana was coercively extorted to pay Santiago $1,500.00 and Zambrana asked Santiago for an additional 4 days to pay the balance.

24. When Zambrana could not gather the money to pay the balance in 4 days, Days appeared at Zambrana's business with additional threats.

25. Zambrana called Santiago to report Days and Santiago responded that Days was there because Zambrana did not pay the full amount.

26. Zambrana was coercively extorted by Santiago to pay the balance of the cash and Zambrana waited for the license. When the license was not forthcoming, Santiago told Zambrana that he [Zambrana] had become an issue at City Hall and Zambrana would need to take care of a few more people and that required more money for Santiago.

27. Zambrana advised Santiago that he did not have any more money, and Santiago responded that without money Zambrana could not get a license. Santiago demanded $1,800.

28. Zambrana was coercively extorted to pay Santiago $1,000 but he could not pay the full $1,800. As expected, Days showed up again yelling threats that Zambrana could not be at his business property and threatening Zambrana with imprisonment. It was obvious that any delay in payment resulted in intimidation and threats from Days.

29. When Zambrana told Santiago that Days was after him again, Santiago responded that it was Zambrana's fault for not paying the money.

30. Zambrana was coercively extorted to pay Santiago another $800 and two months went by without news of the license. However, Days repeatedly visited Zambrana with more threats of jail and reporting the "Mexican" to immigration officials.

31. Zambrana then went to City Hall to see Santiago and Santiago warned Zambrana never to talk about money at City Hall but he will see him later that night.

32. Santiago went to see Zambrana later that night and brought Dante Starks, a lobbyist, with him to tell Zambrana that an additional $1,500 was needed. Zambrana told them he needed 4-5 days to gather that additional sum of money.

33. About a week later, Santiago called asking for the money and Zambrana told him he needed to sell equipment. Santiago said that was a problem. Thereafter, Days appeared yelling, cursing and threatening Zambrana that he would be arrested.

34. Days blocked Zambrana's car, which was parked at Zambrana's business location and called the police. The police did not arrest Zambrana. Days stayed there making calls and eventually gave the phone to Zambrana with Starks on the other end warning Zambrana that Starks was not playing games.

35. Eventually, Zambrana visited the FBI to report what is happening to him.

36. Unbeknownst to Opa-Locka officials that the FBI was now involved, the extortion continued for Zambrana to make cash payments to get a license and so did the threats.

37. The next official involved in the extortion was David Chiverton, the Assistant City Manager at the time, who later became the Opa-Locka City Manager. Chiverton, with an introduction from Santiago, wanted $3,500 to help Zambrana get his license. Zambrana eventually negotiated Chiverton down to $2,800.

38. Thereafter, Days reappeared to apply additional pressure on Zambrana with more threats of jail and reporting him to immigration for operating a business without an occupational license.

39. Thereafter, the son of the Mayor of the City joined the extortion telling Zambrana that money paid to him would resolve Zambrana's licensing issues.

40. From the onset, Zambrana simply sought to obtain an occupational license. Zambrana would repeatedly tell the City officials and employees who would care to listen that all he wanted to do was work and provide for his family, including teenage son who was battling cancer. But Days did not care; he would continue the pressure and ignore all pleas from Zambrana to allow him to work to earn a living wage for his family, including his son who desperately needed medical care. The City officials, including Santiago, ignored Zambrana's pleas and demanded more money.

41. Chiverton did plead guilty to the crime of, *inter alia*, committing extortion under color of official right.

42. Eventually, with no license, limited in the money he could generate from his business, and without other sources to borrow funds, Zambrana had to ask his cancer stricken son if he could use his son's social security payment to pay the rent on the property out of fear Zambrana would lose the property in which he had invested so much time and money in the hopes of eventually owning the property. Zambrana's son agreed. Zambrana's son died shortly thereafter.

43. Zambrana never obtained his license, lost the money borrowed from friends and clients to maintain his business, had to sell business equipment at below market price to maintain

his business afloat, lost inventory and clients, lost profits, incurred rental payments and other expenses for a property he could not fully use because the extortion scheme. And, Zambrana was never able to purchase the property.

**COUNT I**
(Violation of Equal Protection Clause)

44. Plaintiff re-alleges paragraphs 1 through 43 as fully set forth herein.

45. The City enforced a practice and custom of threatening, intimidating and extorting individuals, including Plaintiff, based on national origin to operate a business in the City.

46. The practice and custom was authorized by policymakers within the City and it was a widespread practice so permanent and well-settled as to constitute a custom or usage with the force of law.

47. As a direct and proximate result of the aforementioned acts and omissions, Plaintiff's Fourteenth Amendment Rights have been violated. By their acts and omissions, the City officials, including Days, Chiverton and Santiago, acted under color of state law to deprive Plaintiff of his Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.

48. As a direct and proximate result of the violations of Plaintiff's Fourteenth Amendment rights, Plaintiff has suffered mental and emotional pain and suffering, mental anguish, embarrassment, humiliation and damages.

WHEREFORE, Plaintiff demands judgement for compensatory and special damages, an award of reasonable attorney's fees pursuant to 42 U.S.C. § 1988 and costs pursuant to 42 U.S.C. §§ 1920 and 1988.

## COUNT II

## Deprivation of Property and Rights without Due Process

49. Plaintiff re-alleges paragraphs 1 through 43 as it's fully set forth herein.

50. The City enforced a practice and custom of threats, intimidation and extortion to deprive individuals, including Plaintiff, of their property and rights, without procedural and substantive due process guaranteed under the Constitution, and in violation thereof.

51. The practice and custom was authorized by policymakers within the City and it was a widespread practice so permanent wide-spread and well-settled as to constitute a custom or usage with the force of law. The threats, intimidation and extortion was the way things were done in the City.

52. As a direct and proximate result of the aforementioned acts and omissions, Plaintiff's Constitutional rights have been violated. By their acts and omissions, the City officials, including Days, Chiverton and Santiago, acted under the color of state law to deprive Plaintiff of his Constitutional rights without due process in violation of 42 U.S.C. § 1983.

53. As a direct and proximate cause of the violations of Plaintiff's rights, Plaintiff has suffered mental and emotional pain and suffering, mental anguish, embarrassment, humiliation and damages.

WHEREFORE, Plaintiff demands judgement for compensatory and special damages, an award of reasonable attorney's fees pursuant to 42 U.S.C. § 1988 and costs pursuant to 42 U.S.C. §§ 1920 and 1988.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues triable by jury.

Dated this 13th day of September, 2016.

DORTA LAW
334 Minorca Avenue
Coral Gables, Florida 33134
Telephone: 305-441-2299
Telecopier: 305-441-8849
mrd@dortalaw.com
file@dortalaw.com

By: /s/ Matias R. Dorta____________________
MATIAS R. DORTA
Florida Bar No. 770817
GONZALO R. DORTA
Florida Bar No. 650269

and

MICHAEL A. PIZZI, P.A.
6225 Miami Lakes Dr., Suite 313
Miami Lakes, Florida 33014
Telephone: 305-777-3800
Telecopier: 305-777-3802
mpizzi@pizzilaw.com

By: /s/ Michael A. Pizzi, Jr.__________________
MICHAEL A. PIZZI, JR.
Florida Bar No. 79545