**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 16-cv-23927-JAL

FRANCISCO ZAMBRANA,

Plaintiff,

v.

CITY OF OPA-LOCKA,

Defendant.
________________________________/

# DEFENDANT, CITY OF OPA-LOCKA'S, REPLY IN SUPPORT OF ITS MOTION TO DISMISS

The Defendant, CITY OF OPA-LOCKA, by and through its undersigned attorneys and pursuant to Local Rule 7.1, submits this reply memorandum in support of its Motion to Dismiss (DE 9), and states:

## I. Plaintiff's concession

Plaintiff concedes that the equal protection claim framed in the Complaint is legally deficient. The same concession is true for the substantive due process count, albeit *sub silentio.* Although in his Response, Plaintiff seeks leave to amend the equal protection claim (DE 16, p. 7), he has not properly sought leave to amend that claim (Count II) nor has he submitted a proposed pleading. Notwithstanding, the City does not anticipate objecting to such leave at the good-faith conference should Plaintiff proceed with his wish.

The City does, however, object to Plaintiff's improper attempt to cure the deficiencies noted in the City's Motion by filing exhibits to his Response. Plaintiff failed to attach any

exhibits to his Complaint and he did not incorporate any exhibits to his pleading. While a Defendant may have the right to attach exhibits to a motion to dismiss when the exhibits should have been attached to the complaint, Plaintiff (i.e., the master of his pleading) can not use a response memorandum to inject new exhibits into his pleading. See, *e.g.*, Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1281 n.16 (11th Cir.1999)("The rationale is that when a plaintiff files a complaint based on a document but fails attach that document to the complaint, the defendant may so attach the document . . . without converting the motion into one for summary judgment.") (emphasis added); Halmos v. Bamardier Aerospace Corp., 404 Fed. Appx. 376, 377 (11th Cir. 2010) (same).

## II. The Substantive Due Process Count Remains Defective

Plaintiff cites Apothecary Development Corp., 517 F. App'x at 892, for the proposition that the City employees' alleged criminal conduct violated his constitutional right to lawfully earn a living. While this may be what is alleged, such an allegation of fact, standing alone, does not support municipal liability. Instead, the Complaint fails to establish a Monell claim against the City.

Apothecary Development Corp. involved an individual defendant seeking interlocutory review of an order denying his motion to dismiss on the basis of qualified immunity. There, the defendant officials allegedly effectuated a *"systematic police operation designed to harass"* the plaintiff's customers and inhibit patronage. In finding the right to work lawfully to be clearly established, the Eleventh Circuit explained:

> *Carr argues that Plaintiffs failed to assert violations of clearly established constitutional rights and that he is entitled to qualified immunity. We agree with Carr that Plaintiffs have*

> *failed to properly allege a violation of their equal protection rights [for failure to allege an appropriate comparator]. However, we also agree with the district court's order that Plaintiffs have properly alleged violations of their substantive due process rights and that dismissal based on qualified immunity at this stage in the proceedings would be premature.*

Id. at 891.[1]

Here, nothing in Plaintiff's Complaint ties the crimes of certain City employees and non-employees to a practice or custom of the City of Opa-locka. And while the Response argues that a right-to-work § 1983 claim is alleged, a plain reading of the Complaint suggests otherwise. While the Complaint (DE 1) passively mentions Plaintiff's *"business"* in paragraphs 9, 10, 13, 15, 22, 24, 27, 34, 38, and 42; and in a description of Plaintiff's purported damages at paragraphs 43 (alleging Plaintiff *"lost . . . clients to maintain his business, had to sell business equipment at below market price to maintain his business afloat, lost inventory and clients, lost profits . . . ."*) and 45,[2] it does not allege that Plaintiff at any time was legally entitled to an occupational license and, as a result, had a right to work from the premises.

The Response argues that the Complaint *"details the practice and custom authorized by policy makers"* (DE 16, p. 5), however, Plaintiff has not identified these alleged policy makers by name or with any specificity. Plaintiff also fails to explain how the practice–

---

[1] That is readily distinguishable from this case. The Complaint did not allege a claim for a substantive due process business-interference claim. Rather, the Complaint simply alleged that Plaintiff had been denied an occupational license.

[2] Plaintiff's purported business is not joined as a party plaintiff. The Complaint does not even identify the business entity by name.

which included alleged crimes by non-City employees – a lobbyist and the son of an elected official– became an unofficial policy of the City. That a member of a five-person council and a high-ranking executive and to other employees allegedly committed crimes for their own benefit is simply not enough to trigger Monell liability.

Plaintiff's reliance on Hoefling v. Ciy Miami is similarly misplaced. In noting that *"not all theories of municipal liability under § 1983 require (or depend on) a single final policymaker, "* the Eleventh Circuit explained how municipal liability could be properly alleged:

> *A municipality can be liable for an* ***official policy*** *enacted by its legislative body (e.g., an ordinance or resolution passed by a city council). See Monell, 436 U.S. at 661, 694-95; McCusik v. City of Melbourne, 96 F.3d 478, 483 (11th Cir. 1996). Municipal liability may also attach if* ***final policymakers have acquiesced in a longstanding practice that constitutes the entity's standard operating procedure****. See Bd. of Cty. Commissioners v. Brown, 520 U.S. 397, 403-04, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997); Brown v. City of Ft. Lauderdale, 923 F.2d 1474, 1481 n. 11 (11th Cir. 1991). And a municipality can be held liable "on the basis of* ***ratification*** *when a subordinate public official makes an unconstitutional decision and when that decision is then* ***adopted by someone who does have final policymaking authority****." Matthews v. Columbia County, 294 F.3d 1294, 1297 (11th Cir. 2002).*

811 F.3d at 1279 (emphasis added).

In finding the complaint at issue properly alleged a claim for an unofficial policy of seizing boats, the Eleventh Circuit emphasized the following pleaded facts:

> *Mr. Hoefling received a call from a friend "notifying him that the police were taking boats." And, in fact, on his return, he discovered that his own sailboat had been "unlawfully seized." Second, Mr. Hoefling alleged that "local mariners" told him, and that he was "independently aware, that others have fallen*

> *victim to similar conduct as a result of the City['s] and [the marine patrol officers'] failure to adhere to law and appropriate procedures regarding the investigation and destruction of potentially derelict vessels." Third, Mr. Hoefling alleged that the City refers to this "systematic roundup and destruction of ugly boats in its waters" as a "cleanup" program. Based on these allegations, Mr. Hoefling alleged that the City had a "policy, custom, and/or practice" of "failing to abide by" the state laws, regulations, and procedures governing the "investigation and . . . removal of derelict vessels located in state waters." Furthermore, he alleged that the defendants did "not follow established law and procedures intended to safeguard against the unlawful destruction of private property[,] . . . instead choosing to remove and destroy [his] property without due process. In sum, the City and its marine patrol officers, "as a matter of policy, custom, and/or practice, ignored [his] fundamental rights, as well as the fundamental rights of other vessel owners."*

811 F.3d at 1280.

Hoefling stands in stark contrast to Plaintiff's pled claim. Nowhere in the Complaint does Plaintiff allege that he had a property right in an occupational license. Indeed, Plaintiff fails to allege that he was entitled to an occupational license at any time prior to allegedly being extorted. And the Complaint infers that he was not as code enforcement fines had begun to mount prior to any alleged extortion. See, generally, DE 1.

Unlike the property (*i.e.*, boat) which was improperly seized by Miami as part of systemic practice to serve its own interest, the Complaint, here, merely alleges that certain Opa-Locka employees committed crimes in seeking bribes from Plaintiff. Unlike Miami, which profited directly from its own practice, here the City of Opa-Locka gained nothing from individual criminal acts. For that reason, Plaintiff's relief – if any – should be against the individuals who he claims violated his right to work while acting under color of law.

Finally, the response (DE 16, p. 4) relies on an out-of-circuit case involving an alleged decade-long municipal racketeering scheme to extort outsiders in order avoid dismissal. That case is also distinguishable as it multi-level corruption over an extended period of time:

> *[W]e turn to the question of whether coercive extortion, if found, could be attributed to some de facto municipal policy. "An unconstitutional policy or custom may be inferred from a single decision or act . . . [but] **the isolated action must be taken by a municipal official with 'final policy-making authority' in the relevant area of the city's business**." However, "the fact that a particular official -- even a policymaking official -- has discretion in the exercise of a particular function does not, without more, give rise to municipal liability based on an exercise of that discretion." In their pleadings, the plaintiffs have alleged that a Russo as Mayor, Benjamin Zanni as a town councilman, and others operated a de facto government **which controlled the Town for more than a decade, routinely engaging in bribery, extortion, corruption and other unlawful activities**. While a showing that a Russo acted illegally in the exercise of his discretion as Mayor might not by itself give rise to municipal liability, we think that under these pleadings, the plaintiffs could indeed prove a set of facts from which a trier of fact could infer an unconstitutional policy or custom with respect to the Town's government. For example, a factfinder could conclude that extortion of outsiders, businessmen, or developers, if proven, was "'the way things are done and have been done'" in the Town. As a result, we reverse the district court's dismissal of the plaintiffs' section 1983 claim on the pleadings, and we remand for further proceedings on their claim.*

Roma Constr. Co. v. aRusso, 96 F.3d 566, 576 (1st Cir. 1996) (emphasis added) (internal citations omitted).

*Sub judice*, nothing in the Complaint (DE 1) alleges that any City employee exercised such control over the City as to establish such a *de facto* government. The Complaint only alleges that Plaintiff was subjected to a "shake down." No one else. Roma is inapposite.

**WHEREFORE**, the Defendant, CITY OF OPA-LOCKA, requests the entry of an Order dismissing the Complaint (DE 1), with leave to amend, together with such other and further relief as the Court deems just and proper.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this **23rd** day of November, 2016, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system. I further certify that I either mailed the foregoing document and the Notice of Electronic Filing by first class mail to any non CM/ECF participants and/or the foregoing document was served via transmission of Notice of Electronic Filing generated by CM/ECF to any and all active CM/ECF participants.

JOHNSON, ANSELMO, MURDOCH,
BURKE, PIPER & HOCHMAN, P.A.
Attorneys for Defendant City of Opa-Locka
2455 East Sunrise Boulevard, Suite 1000
Fort Lauderdale, Florida 33304
Telephone.: (954) 463-0100
Facsimile.: (954) 463-2444

By: *\/s/ J. Marcos Martinez*
CHRISTOPHER J. STEARNS
Florida Bar No. 557870
J. MARCOS MARTINEZ
Florida Bar No. 44573

**SERVICE LIST**

Matias R. Dorta, Esq.
DORTA LAW
334 Miorca Avenue
Coral Gables, Florida 33134
Telephone: (305) 441-2299
Facsimile: (305) 441-8849
mrd@dortalaw.com
file@dortalaw.com

Michael A. Pizzi, Jr., Esq.
MICHAEL A. PIZZI, P.A.
6225 Miamim Lakes Drive, Suite 313
Miami Lakes, Florida 33014
Telephone: (305) 777-3800
Facsimile: (305) 777-3802
mpizzi@pizzilaw.com

---

**Christopher J. Stearns, Esq.**
**J. Marcos Martinez, Esq.**
JOHNSON, ANSELMO, MURDOCH,
BURKE, PIPER & HOCHMAN, P.A.
Attorneys for Defendants
2455 East Sunrise Boulevard, Suite 1000
Fort Lauderdale, Florida 33304
Telephone.: (954) 463-0100
Facsimile.: (954) 463-2444
stearns@jambg.com / blouin@jambg.com
martinez@jambg.com