UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:16-cv-23927-JAL

FRANCISCO ZAMBRANA,

    Plaintiff,

Vs.

CITY OF OPA-LOCKA, DAVID
CHIVERTON, LUIS SANTIAGO,
GREGORY DAYS, and
GREGORY HARRIS,

    Defendant.
_____/

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Francisco Zambrana, sues Defendants, the City of Opa-Locka, David Chiverton, Luis Santiago, Gregory Days, and Gregory Harris and alleges:

### Nature of Action and Jurisdiction

1. This is an action for damages under 42 U.S.C. § 1983 against Defendants for committing acts, under color of state law, with the intent and for the purpose of depriving Plaintiff of rights secured under the Constitution and laws of the United States.

2. This Court has jurisdiction under 28 U.S.C. § 1331.

3. Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391 as all events giving rise to this cause of action occurred in this judicial district.

4. All conditions precedent to this action have occurred or been performed.

### Parties

5. Plaintiff, Francisco Zambrana, is *sui juris* and a resident of Miami-Dade County, Florida.

CASE NO. 1:16-cv-23927-JAL

6. Defendant, the City of Opa-Locka ("City"), is a municipal corporation lying within Miami-Dade County, Florida.

7. David Chiverton ("Chiverton"), is *sui juris* and currently serving time in FCI Tallahassee, Florida. At all times relevant, he was an official of the City holding positions of Assistant City Manager and City Manager.

8. Defendant, Luis Santiago, ("Santiago"), is *sui juris* and a resident of Miami-Dade County, Florida. At all times relevant, Santiago was a Commissioner for the City.

9. Defendant, Gregory Days ("Days"), is *sui juris* and a resident of Broward County, Florida. At all times relevant, Days was the Director of Code Enforcement for the City.

10. Defendant, Gregory Harris ("Harris"), is *sui juris* and a resident of Miami-Dade County, Florida. At all times relevant, Harris was an Operations Manager and then Assistant Director of the Public Works Department of the City.

11. At all times relevant, the individual Defendants were employees and public officials of the City and acted under color of state law.

**Facts**

12. Mr. Zambrana, who arrived in the United States in 1984 from Nicaragua, always believed that with hard work he could provide for his family.

13. For approximately 20 years, he sold heavy construction and farm equipment, mostly through auctions, and thought he found a location in the City from which to base his business, for the storage, repair, and sale of equipment.

14. Mr. Zambrana found a location at 2695 NW 141st St., in Opa-Locka at a good price and offered with a lease to purchase option. Mr. Zambrana used his savings and borrowed money from friends to lease the property that would house his business with the option of eventually purchasing the property. Mr. Zambrana did not know that he was about to enter into the nightmare of extortion, coercion, threats, and intimidation at the hands of the City employees and public officials as he tried to obtain the necessary license to run his business within the City's limits. A license that is routinely obtained for a few hundred dollars became a living hell for Zambrana.

15. Mr. Zambrana's attempt to get an occupational license was met with a series of delays, and rejections, as he was repeatedly told his application, was incomplete or rejected without explanation.

16. At one time, the City asked for the plans for the future use of his property, and Mr. Zambrana provided the City with the only set of plans he had. When he returned to get his license, the City rejected it again claiming it needed the plans and stating that Mr. Zambrana never gave the City the plans. Each time Mr. Zambrana returned with a completed application, it was summarily denied.

17. In the meantime, the City's Code Enforcement Chief, Gregory Days, became the enforcer as he assisted his higher-ups in the extortion of Zambrana. Days would go by Mr. Zambrana's location on a regular basis with threats of shutting down Mr. Zambrana's business, throwing him in jail or reporting him to immigration. And, to put more pressure on Zambrana, the Days would issue multiple citations on the Property.

18.     Days required Zambrana to repair holes at his location and paint it.  Thereafter, Days would criticize the repairs and the paint.  Days required Zambrana to put a tarp around the fence so the equipment could not be seen.  Zambrana did it all in the hopes of getting the license so he could provide for his family, including his teenage son who was battling cancer.

19.     Days visited Zambrana's property unannounced once or twice a week threatening Zambrana with shutting him down for working without a license.  Citations were levied against the Property, and each time Zambrana would ask why, it was for operating a business without an occupational license, or citations were issued for alleged code enforcement violations.  All was a pretense to exert pressure on Zambrana.

20.     Days would tell Zambrana to see him at the City with the new application, so Zambrana would set an appointment only to have Days fail to show.

21.     With each subsequent visit, the threats from Days became more hostile.  Days would show up with his customary line of that all you motherf***ers are going to jail and the often-repeated threat that he would be calling immigration.  Days referred to Zambrana as "Mexican."  The threat of deportation was repeatedly made as Days used Zambrana's national origin to escalate the threats.

22.     With each threat, Zambrana would tell Days that he just wanted to work and he needed his license. Zambrana would ask Days what he needed to do to get his occupational license and the response was just more threats and more citations on the Property for the purported violations.

CASE NO. 1:16-cv-23927-JAL

23. Zambrana began working at nights out of fear that Days would see him at work during regular work hours are threaten him with jail and deportation. The same fears caused Zambrana only to use his location to store equipment fearing that sales from the location would cause even more threats from Days.

24. One night, Mr. Zambrana was cleaning equipment with two others when Days appeared unannounced. Days yelled at them to get against the wall because he was calling Immigration.

25. One day, after one of Zambrana's regular visits to the City with his application hand and after receiving the same response of rejection then directing him to see Days, Opa-Locka Commissioner Luis Santiago stopped Zambrana and told him that he [Santiago] heard Zambrana was having trouble getting a license from the City. When Zambrana explained the multitude of problems, Santiago offered to help him.

26. Santiago met Zambrana at Zambrana's business and told Zambrana that he could get the occupational license easily, but it will cost him $2,800.00. Santiago told Zambrana that he must do exactly what Santiago instructed him to do. Santiago advised Zambrana that Days worked for Santiago so Santiago could help him.

27. Zambrana told Santiago he could get $1,500.00 by the next day, but he needed more time to pay for the balance to secure his occupational license. Zambrana was coercively extorted to pay Santiago $1,500.00, and Zambrana asked Santiago for an additional four days to pay the balance.

28. When Zambrana could not gather the money to pay the balance in 4 days, Days appeared at Zambrana's business with additional threats.

29. Zambrana called Santiago to report Days, and Santiago responded that Days was there because Zambrana did not pay the full amount.

30. Zambrana was coercively extorted by Santiago to pay the balance of the cash and Zambrana waited for the license. When the license was not forthcoming, Santiago told Zambrana that he [Zambrana] had become an issue at City Hall and Zambrana would need to take care of a few more people, and that required more money for Santiago.

31. Zambrana advised Santiago that he did not have any more money, and Santiago responded that without money Zambrana could not get a license. Santiago demanded $1,800.

32. Zambrana was coercively extorted to pay Santiago $1,000, but he could not pay the full $1,800. As expected, Days showed up again yelling threats that Zambrana could not be on his business property and threatened Zambrana with imprisonment. It was obvious that any delay in payment resulted in intimidation and threats from Days.

33. When Zambrana told Santiago that Days was after him again, Santiago responded that it was Zambrana's fault for not paying the money.

34. Zambrana was coercively extorted to pay Santiago another $800 and time went by without news of the license. However, Days repeatedly visited Zambrana with more threats of jail and reporting the "Mexican" to immigration officials.

35. Zambrana then went to City Hall to see Santiago and Santiago warned Zambrana never to talk about money at City Hall, but he will see him later that night.

CASE NO. 1:16-cv-23927-JAL

36. Santiago went to see Zambrana later that night and brought Dante Starks, a lobbyist, with him to tell Zambrana that an additional $1,500 was needed. Zambrana told them he needed 4-5 days to gather that additional sum of money.

37. About a week later, Santiago called asking for the money, and Zambrana told him he needed to sell equipment. Santiago said that was a problem. Thereafter, Days appeared yelling, cursing and threatening Zambrana that he would be arrested.

38. Days blocked Zambrana's car, which was parked at Zambrana's business location and called the police. The police did not arrest Zambrana. Days stayed there making calls and eventually gave the phone to Zambrana with Starks on the other end warning Zambrana that Starks was not playing games.

39. Eventually, Zambrana visited the FBI to report what is happening to him.

40. Unbeknownst to Opa-Locka officials that the FBI was now involved, the extortion continued for Zambrana to make cash payments to get a license and so did the threats.

41. The next official involved in the extortion was David Chiverton, the Assistant City Manager, who later became the Opa-Locka City Manager. Chiverton, with an introduction from Santiago, wanted $3,500 to help Zambrana get his license. Zambrana eventually negotiated Chiverton down to $2,800.

42. Thereafter, Days reappeared to apply additional pressure on Zambrana with more threats of jail and reporting him to immigration for operating a business without an occupational license.

43.     Thereafter, the son of the Mayor of the City, Demetrius Corlean Taylor ("Taylor") joined the extortion telling Zambrana that money paid to him would resolve Zambrana's licensing issues; and other issues involving the numerous citations being placed on the Property to pressure Zambrana.

44.     On one occasion, battling the constant flurry of citations on the Property, Taylor relayed to Zambrana that he needed to pay $3,000 to clear the citations and make the matters right with the City. When Zambrana informed the Mayor's son he only had $300 and would need more time to get the rest, Taylor expressed his frustration with Zambrana. Mysteriously, that night, two trucks on Zambrana's Property were set on fire.

45.     Harris, whose responsibilities included overseeing and directing the initiation and maintenance of water service to business and individuals in the City, would take instructions from Chiverton to initiate, restore or continue water service to those who paid extortion to Chiverton.

46.     Zambrana was one of those who suffered the unjustified shutdown of water service in his business as a method of harassment, threat, and intimidation, and eventually was extorted to pay Harris $300 to have his water service restored.

47.     From the onset, Zambrana simply sought to obtain an occupational license. Zambrana would repeatedly tell the City officials and employees who would care to listen that all he wanted to do was work and provide for his family, including teenage son who was battling cancer. But Days did not care; he would continue the pressure and ignore all pleas from Zambrana to allow him to work to earn a living wage for his family, including his son who desperately needed

CASE NO. 1:16-cv-23927-JAL

medical care. The City officials, including Santiago, ignored Zambrana's pleas and demanded more money.

48. Chiverton, Harris, and Santiago did plead guilty to the crime of, *inter alia*, committing extortion under color of official right, not only for their actions against Zambrana but against others as well.

49. Eventually, with no legitimate license, multiple citations, threats of eviction from the Property's owner due to numerous citations, limited in the money he could generate from his business, and without other sources to borrow funds, Zambrana had to ask his cancer-stricken son if he could use his son's social security payment to pay the rent on the property out of fear Zambrana would lose the property in which he had invested so much time and money in the hopes of eventually owning the property. Zambrana's son agreed. Zambrana's son died shortly thereafter.

50. Zambrana never obtained a legitimate license, lost the money borrowed from friends and clients to maintain his business, had to sell business equipment at below market price to maintain his business afloat, lost inventory and clients, lost profits, incurred rental payments and other expenses for a property he could not fully use because the extortion scheme. And, Zambrana was never able to purchase the Property.

## COUNT I

### (<u>Violation of Equal Protection Clause: Individual Defendants</u>)

51. Plaintiff realleges paragraphs 1 through 50 as fully set forth herein.

CASE NO. 1:16-cv-23927-JAL

52. Defendants, Chiverton, Santiago, Harris and Days, without cause or justification and acting under color of state law, threatened, intimidated, and extorted Plaintiff, and others, such as Francisco Pujol, based on national origin, as Plaintiff tried to operate a business within the City.

53. Conversely, when a code officer gave citations to a property owned by an African-American family related to the City Mayor's Mayor, who is African-American, the City Manager directed that two fines for operating for those citations, which were for operating an unsafe structure, to be removed. The City Code Officer who refused to rescind the code citations was removed from his position within the City, and he sued the City.

54. City Manager, Steve Shriver was fired by the City for, *inter alia* for refusing to waive thousands of dollars in liens and fines at a housing complex owned by African-Americans known as the Gardens.

55. Lawsuits, including by the former City Manager, the Deputy City Manager, and the City Clerk, contend that the City has a pattern and practice of discriminating against Hispanics within the City.

56. As a direct and proximate result of the aforementioned acts and omissions, Plaintiff's Fourteenth Amendment Rights have been violated. By their acts and ommissions, Days, Chiverton, Santiago, and Harris, acted under color of state law to deprive Plaintiff of his Fourteenth Amendment rights in violation of 42 U.S.C. §1983.

57. As a direct and proximate result of the violations of Plaintiff's Fourteenth Amendment rights, Plaintiff has suffered mental and emotion pain and suffering, mental anguish, embarrassment, humiliation, and damages.

CASE NO. 1:16-cv-23927-JAL

58. The individual Defendants' actions, as described above, were malicious and with reckless indifference to Plaintiff's Fourteenth Amendment rights and as such support an award of punitive damages.

WHEREFORE, Plaintiff demands judgment for compensatory and special damages, punitive damages, an award of reasonable attorney's fees pursuant to 42.U.S.C. §1988 and costs pursuant to 42 U.S.C. §1920 and 1988.

## COUNT II

### (<u>Violation of Equal Protection Clause:  The City</u>)

59. Plaintiff re-alleges paragraphs 1 through 58 as fully set forth herein.

60. The City enforced a practice and custom of threatening, intimidating and extorting individuals, including Plaintiff, based on national origin to operate a business in the City.

61. The practice and custom were authorized by policymakers within the City, and it was a widespread practice so permanent and well-settled as to constitute a custom or usage with the force of law.

62. As a direct and proximate result of the aforementioned acts and omissions, Plaintiff's Fourteenth Amendment Rights have been violated. By their acts and omissions, the City officials, including Days, Chiverton, Santiago, and Harris, acted under color of state law to deprive Plaintiff of his Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.

63. As a direct and proximate result of the violations of Plaintiff's Fourteenth Amendment rights, Plaintiff has suffered mental and emotional pain and suffering, mental anguish, embarrassment, humiliation, and damages.

CASE NO. 1:16-cv-23927-JAL

WHEREFORE, Plaintiff demands judgment for compensatory and special damages, punitive damages, an award of reasonable attorney's fees pursuant to 42 U.S.C. § 1988 and costs pursuant to 42 U.S.C. §§ 1920 and 1988.

## COUNT III

### (Deprivation of Property Rights without Due Process:  Individual Defendants)

64. Plaintiff realleges paragraphs 1 through 50 as fully set forth herein.

65. Defendants Chiverton, Santiago, Harris and Days, without cause or justification and acting under color of state law, deprived individuals, including Plaintiff, of their property and rights, without procedural or substantive due process guaranteed under the Constitution and in violation thereof.

66. As a direct and proximate result of the aforementioned acts and omissions, Plaintiff's Constitutional rights have been violated.  By their acts and omissions, Days, Chiverton, Santiago, and Harris, acted under color of state law to deprive Plaintiff of his Constitutional rights without due process in violation of 42 U.S.C. 1983.

67. As a direct and proximate cause of the violations of Plaintiff's rights, Plaintiff has suffered mental and emotional pain and suffering, mental anguish, embarrassment, humiliation, and damages.

68. The individual Defendants' actions, as described above, were malicious and with reckless indifference to Plaintiff's due process rights and as such support an award of punitive damages.

CASE NO. 1:16-cv-23927-JAL

WHEREFORE, Plaintiff demands judgment for compensatory and special damages, punitive damages, an award of reasonable attorney's fees pursuant to 42 U.S.C.§1988, and costs pursuant to 42 U.S.C. §1920 and 1988.

## COUNT IV

### (Deprivation of Property and Rights without Due Process: The City)

69. Plaintiff re-alleges paragraphs 1 through 50 as fully set forth herein.

70. The City enforced a practice and custom of threats, intimidation and extortion to deprive individuals, including Plaintiff, of their property and rights, without procedural and substantive due process guaranteed under the Constitution, and in violation thereof.

71. The practice and custom were authorized by policymakers within the City, and it was a widespread practice so permanent wide-spread and well-settled as to constitute a custom or usage with the force of law. The threats, intimidation, and extortion were the way things were done in the City.

72. As a direct and proximate result of the aforementioned acts and omissions, Plaintiff's Constitutional rights have been violated. By their acts and omissions, the City officials, including Days, Chiverton, Harris, and Santiago, acted under the color of state law to deprive Plaintiff of his Constitutional rights without due process in violation of 42 U.S.C. § 1983.

73. As a direct and proximate cause of the violations of Plaintiff's rights, Plaintiff has suffered mental and emotional pain and suffering, mental anguish, embarrassment, humiliation, and damages.

CASE NO. 1:16-cv-23927-JAL

WHEREFORE, Plaintiff demands judgment for compensatory and special damages, punitive damages, an award of reasonable attorney's fees pursuant to 42 U.S.C. § 1988 and costs pursuant to 42 U.S.C. §§ 1920 and 1988.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues triable by jury.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on September 29, 2017, the foregoing document was served with the Clerk of the Court by using the CM/ECF system on: **Christopher J. Stearns, Esq., Jonathan H. Railey**, Johnson, Anselmo, Murdoch, Burke, Piper & Hochman, P.A. [stearns@jambg.com; railey@jambg.com; blouin@jambg.com].

        DORTA LAW
        334 Minorca Avenue
        Coral Gables, Florida 33134
        Telephone: 305-441-2299
        Telecopier: 305-441-8849
        mrd@dortalaw.com
        file@dortalaw.com

By:  /s/ Matias R. Dorta_____
      MATIAS R. DORTA
      Florida Bar No. 770817
      GONZALO R. DORTA
      Florida Bar No. 650269

      and

                                                              CASE NO. 1:16-cv-23927-JAL

                        MICHAEL A. PIZZI, P.A.
                        6225 Miami Lakes Dr., Suite 313
                        Miami Lakes, Florida  33014
                        Telephone:  305-777-3800
                        Telecopier:  305-777-3802
                        mpizzi@pizzilaw.com

By:    /s/ Michael A. Pizzi, Jr.
          MICHAEL A. PIZZI, JR.
          Florida Bar No. 79545

15